1

THE HONORABLE BARBARA J. ROTHSTEIN

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

STEVEN LASOFF,

No. 2:16-cv-00151-BJR

10

Plaintiff,

**AMAZON'S MOTION FOR
SUMMARY JUDGMENT**

11

v.

12

AMAZON.COM, INC.,

NOTE ON MOTION CALENDAR:
December 30, 2016

13

Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

    A. Lasoff Sold InGrass Products as a Third-Party Seller on Amazon.com. .................... 2

    B. Third-Party Sellers Provide Content for Product Offerings and
    Advertisements, and Are Responsible for Ensuring That the Provided Content
    and Products Are Lawful. ........................................................................................... 2

    C. Lasoff's Claims Against Amazon Arise from Actions by Third-Party Sellers. .......... 4

    D. The Amazon Email and Third-Party Search Engine Advertising At Issue Are
    Fully Automated. ........................................................................................................ 5

    E. Procedural Background. .............................................................................................. 5

III. ARGUMENT ................................................................................................................. 6

    A. Legal Standard .......................................................................................................... 6

    B. The Communications Decency Act Bars All of Lasoff's State Law Claims. .............. 7

    C. Lasoff Cannot Sustain a Claim for Trademark Infringement or Unfair
    Competition. .............................................................................................................. 8

        1. Lasoff Has Established No Evidence of a Valid, Protectable
        Trademark. ........................................................................................................ 8

        2. There Is No Evidence Establishing Likelihood of Customer Confusion
        Because Amazon Itself Has Not "Used" the InGrass Mark. ......................... 11

        3. Amazon, as an Online Intermediary, Cannot Be Held Liable for
        Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A). ......................... 12

        4. Lasoff's State and Common Law Claims for Trademark Infringement
        and Unfair Competition Fail for the Same Reasons as His Lanham Act
        Claim. ............................................................................................................. 13

    D. Lasoff Cannot Establish a False Advertising Claim. ................................................ 14

    E. Lasoff Cannot Establish a Claim for Monopolization. ............................................. 16

    F. Lasoff's Tort Claims Are Barred by the Economic Loss Doctrine. .......................... 18

    G. Lasoff Cannot State a Claim for Unjust Enrichment. ............................................... 21

    H. Lasoff Cannot State a Claim for Promissory Estoppel. ............................................ 22

    I. Lasoff's Demand for Exemplary Damages and Attorneys' Fees Should Be
    Stricken. ................................................................................................................... 23

IV. CONCLUSION ............................................................................................................ 24

AMAZON'S MOTION FOR SUMMARY JUDGMENT - i
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1

TABLE OF AUTHORITIES

Page(s)

2

**Cases**

3

*Alejandre v. Bull*,
    159 Wn.2d 674, 153 P.3d 864 (2007) ..........................................................................18, 19

4

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ....................................................................................7

5

6

*Almeida v. Amazon.Com, Inc.*,
    No. 04-20004-CIV, 2004 WL 4910036 (S.D. Fla. July 30, 2004), *aff'd*, 456
    F.3d 1316 (11th Cir. 2006) ..........................................................................................7

7

8

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994).........................................................................................14

9

10

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979), *abrogated in part on other grounds by Mattel,*
    *Inc. v. Walking Mountain Prods.,* 353 F.3d 792 (9th Cir. 2003) ...............................11

11

12

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*,
    378 F. App'x 652 (9th Cir. 2010) ...............................................................................15

13

14

*Applied Info. Scis. Corp. v. eBAY, Inc.*,
    511 F.3d 966 (9th Cir. 2007) .......................................................................................8

15

16

*Baldino's Lock & Key Service, Inc. v. Google Inc.*,
    624 F. App'x 81 (4th Cir. 2015) .................................................................................15

17

*Baldino's Lock & Key Service, Inc. v. Google Inc.*,
    88 F. Supp. 3d 543, 546 (E.D. Va. 2015) ..................................................................15

18

19

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .....................................................................................7

20

*Becker v. Wash. State Univ.*,
    165 Wn. App. 235, 266 P.3d 893 (2011) ..................................................................23

21

22

*Bell Helicopter Textron Inc. v. Islamic Republic of Iran*,
    764 F. Supp. 2d 122 (D.D.C. 2011) ...........................................................................24

23

24

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*,
    124 Wn.2d 816, 881 P.2d 986 (1994) ........................................................................19

25

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - ii
2:16-cv-00151-BJR

*Boyce v. West*,
   71 Wn. App. 657, 862 P.2d 592 (1993) ..................................................19

*Caesars World, Inc. v. Venus Lounge, Inc.*,
   520 F.2d 269 (3d Cir. 1975).................................................................24

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ...........................................................7, 8

*Chandler v. Wash. Toll Bridge Auth.*,
   17 Wn.2d 591, 137 P.2d 97 (1943).....................................................21

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004)...........................................8

*Donato v. Moldow*,
   865 A.2d 711 (N.J. Super. Ct. App. Div. 2005)...................................7

*E. Orange Bd. of Educ. v. N.J. Sch. Constr. Corp.*,
   963 A.2d 865 (N.J. Super. Ct. App. Div. 2009)...................................23

*eAcceleration Corp. v. Trend Micro, Inc.*,
   408 F. Supp. 2d 1110 (W.D. Wash. 2006)...........................................14

*Eastwood v. Horse Harbor Found., Inc.*,
   170 Wn.2d 380, 241 P.3d 1256 (2010) ...............................................18

*In re eBay Seller Antitrust Litig.*,
   545 F. Supp. 2d 1027 ............................................................................17

*Elcon Constr., Inc. v. E. Wash. Univ.*,
   174 Wn.2d 157, 273 P.3d 965 (2012) .............................................18, 19

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) .............................................................9

*Erwin v. Cotter Health Ctrs.*,
   161 Wn.2d 676, 167 P.3d 1112 (2007) ...............................................14

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ............................................................11, 12

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) .............................................................16

AMAZON'S MOTION FOR SUMMARY JUDGMENT - iii
2:16-cv-00151-BJR

*Furnace v. Sullivan*,
705 F.3d 1021 (9th Cir. 2013) ..................................................................6

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
58 F. Supp. 3d 1166, 1173 (W.D. Wash. 2014).......................................22

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
955 F.2d 1143 (7th Cir. 1992) ...........................................................11, 12

*Havens v. C & D Plastics, Inc.*,
124 Wn.2d 158, 876 P.2d 435 (1994)......................................................23

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) .................................................................16

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
633 F.2d 912 (9th Cir. 1980) ...................................................................14

*Johnson v. Spider Staging Corp.*,
87 Wn.2d 577, 555 P.2d 997 (1976) ........................................................14

*Johnson v. Spokane to Sandpoint, LLC*,
176 Wn. App. 453, 309 P.3d 528 (2013) .................................................18

*Jurin v. Google Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010).....................................................8

*Klinke v. Famous Recipe Fried Chicken, Inc.*,
94 Wn.2d 255, 616 P.2d 644 (1980)........................................................22

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
408 F.3d 596 (9th Cir. 2005) .....................................................................9

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
131 Wn.2d 133, 930 P.2d 288 (1997).......................................................20

*Levi Strauss & Co. v. Blue Bell, Inc.*,
778 F.2d 1352 (9th Cir. 1985) .................................................................10

*Meth Lab Cleanup, LLC v. Bio Clean, Inc.*,
No. C14-1259RAJ, 2016 WL 4539564 (W.D. Wash. Aug. 31, 2016) .....9

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) .................................................................17

AMAZON'S MOTION FOR SUMMARY JUDGMENT - iv
2:16-cv-00151-BJR

1

2
*Nordstrom, Inc. v. Tampourlos,*
  107 Wn.2d 735, 733 P.2d 208 (1987) ................................................................14

3
*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
  96 F.3d 1151 (9th Cir. 1996) ..............................................................................14

4

5
*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,*
  469 U.S. 189, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985) ......................................10

6

7
*Perfect 10, Inc. v. CCBill LLC,*
  488 F.3d 1102 (9th Cir. 2007) ..............................................................................7

8
*Person v. Google, Inc.,*
  No. C06-7297JF(RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007) ....................17

9

10
*Pleas v. City of Seattle,*
  112 Wn.2d 794, 774 P.2d 1158 (1989) (en banc) ...............................................20

11
*Printing Mart-Morristown v. Sharp Elecs. Corp.,*
  563 A.2d 31 (N.J. 1989) .......................................................................................18

12

13
*Queen City Pizza, Inc. v. Domino's Pizza Inc.,*
  124 F.3d 430 (3d Cir. 1997) ................................................................................17

14

15
*Rekhter v. State, Dep't of Soc. & Health Servs.,*
  180 Wn.2d 102, 323 P.3d 1036 (2014) ...............................................................21

16
*S. Cal. Darts Ass'n v. Zaffina,*
  762 F.3d 921 (9th Cir. 2014) .............................................................................8, 9

17

18
*Schneider v. Amazon.com, Inc.,*
  108 Wn. App. 454, 31 P.3d 37 (2001) ..................................................................7

19

20
*Seizer v. Sessions,*
  132 Wn.2d 642, 940 P.2d 261 (1997) ....................................................14, 18, 21

21
*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134 (9th Cir. 1997) .............................................................................15

22

23
*Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cty.,*
  129 Wn. App. 303, 119 P.3d 854 (2005) .............................................................22

24

25
*Tanaka v. Univ. of S. Cal.,*
  252 F.3d 1059 (9th Cir. 2001) .............................................................................16

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - v
2:16-cv-00151-BJR

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010) ...................................................................................12, 13

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) .........................................................................................17

*Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*,
   582 P.2d 1365 (Or. 1978) .............................................................................................20

*Tre Milano, LLC v. Amazon.com, Inc.*,
   No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) ..........................13

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)..........................9, 10, 12

*U.S. Healthcare, Inc. v. Healthsource, Inc.*,
   986 F.2d 589 (1st Cir. 1993) ........................................................................................17

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   205 F.3d 1219 (10th Cir. 2000) ...................................................................................24

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377, 76 S. Ct. 994, 100 L. Ed. 1264 (1956) ............................................18

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) ..................................................................................16, 18

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994)..............................................................................................21

*Woods View II, LLC v. Kitsap County*,
   188 Wn. App. 1, 352 P.3d 807, *review denied*, 184 Wn.2d 1015 (2015)................20

*Young v. Young*,
   164 Wn.2d 477, 191 P.3d 1258 (2008) ......................................................................21

*Zelnick v. Morristown-Beard Sch.*,
   137 A.3d 560 (N.J. Super. Ct. Law Div. 2015) .......................................................18

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010) .......................................................................................9

**Statutes**

15 U.S.C. §§ 1057(b), 1115(a)................................................................................................9

AMAZON'S MOTION FOR SUMMARY JUDGMENT - vi
2:16-cv-00151-BJR

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

15 U.S.C. § 1114 ..................................................................................................... 12

15 U.S.C. § 1117 ..................................................................................................... 23

15 U.S.C. § 1117(b)(1) ........................................................................................... 24

15 U.S.C. § 1125(a) ................................................................................................... 1

15 U.S.C. § 1125(a)(1)(A) ........................................................................ 8, 11, 12, 13

15 U.S.C. § 1125(a)(1)(B) ...................................................................................... 14

47 U.S.C. § 230(c)(1) ................................................................................................. 7

47 U.S.C. § 230(e)(3) ................................................................................................. 7

N.J. Stat. Ann. § 56:3-13 ............................................................................................ 1

N.J. Stat. Ann. § 56:3-13a ........................................................................................ 14

N.J. Stat. Ann. §§ 56:3, 56-4 ................................................................................... 13

N.J. Stat. Ann. § 56:4-1 ............................................................................................. 1

RCW § 19.77.930 ..................................................................................................... 14

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 6

**Other Authorities**

6 Washington Practice: Washington Pattern Jury Instructions: Civil 10.07 (6th ed.
    1997) ................................................................................................................... 18

J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* §
    27:18 .................................................................................................................. 12

R. Lipsey, P. Steiner & D. Purvis, *Economics* 976 (7th ed. 1984) ............................ 16

Restatement (Second) of Torts § 552 (1977) .......................................................... 18

Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy and Monopsony*, 76
    Cornell L. Rev. 297, 324 (1991) ....................................................................... 17

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

88186409.8 0053837-00632

# I.  INTRODUCTION

Amazon moves for summary judgment on Mr. Lasoff's claims for: (1) trademark infringement and unfair competition under Section 1125(a) of the Lanham Act (15 U.S.C. § 1125(a)); (2) false advertising under Section 1125(a) of the Lanham Act; (3) unfair competition under New Jersey law (N.J. Stat. Ann. § 56:4-1); (4) unfair competition under New Jersey common law; (5) trademark infringement under New Jersey law (N.J. Stat. Ann. § 56:3-13); (6) tortious interference with business advantage; (7) gross negligence; (8) monopolization under the Sherman Act; (9) unjust enrichment; (10) promissory estoppel; and (11) injunctive relief.  Mr. Lasoff's claims all stem from the actions of third-party sellers who used the amazon.com marketplace to sell artificial turf products that Mr. Lasoff contends infringe his rights in the InGrass mark.  Instead of pursuing claims against the third-party sellers, Mr. Lasoff attempts to manufacture claims against Amazon.  His attempt fails because the undisputed facts show that Amazon did not offer or sell the allegedly infringing artificial turf; third-party sellers created all allegedly infringing product listings; advertisements for allegedly infringing products were automatically generated using content provided by third-party sellers; and Amazon has acted at all times in good faith.  Summary judgment should be granted for Amazon on all claims.

# II.  FACTUAL BACKGROUND

Amazon[1] operates the website www.amazon.com.  Declaration of Jonathan Schelle ("Schelle Decl.") ¶ 2.  The amazon.com website is a retail marketplace through which Amazon and third-party sellers offer products for sale.  *Id.*  Third-party sellers who offer products through the amazon.com marketplace enter into a contract with Amazon.  *Id.* ¶ 3, Ex. A (Amazon

---

[1] The entity with which Mr. Lasoff contracted is Amazon Services LLC.  Schelle Decl. ¶ 6, Ex. A.  The Complaint names Amazon.com, Inc. as the defendant.  Amazon Services LLC owns and operates the amazon.com website and related services (including all those about which Mr. Lasoff complains).  *Id.* ¶ 6.  As such, Amazon Services LLC is the proper defendant.  Amazon.com, Inc. informed Mr. Lasoff of this at the outset of this case.  *See* Dkt. # 11-1 at note 1 (identifying Amazon Services LLC as proper party).  Amazon.com, Inc. also explained that Amazon Services LLC does not object to its substitution as the proper party.  *Id.*  Mr. Lasoff has yet to substitute the proper party.

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 1
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone* 206.624.0900

1  Services Business Solutions Agreement, or "BSA").  Among other requirements, third-party

2  sellers must agree to be bound by the terms and conditions of their contract.  *Id.*

3  **A.      Lasoff Sold InGrass Products as a Third-Party Seller on Amazon.com.**

4  Mr. Lasoff is a seller of artificial turf products.  Dkt. # 1 ¶¶ 6, 9, 13.  The products that

5  Mr. Lasoff sells under the InGrass name are all purchased from another retailer, the TurfStore,

6  with which Mr. Lasoff admits he does not have any exclusive relationship.  Declaration of

7  Vanessa Power ("Power Decl."), Ex. A (Lasoff Dep. 11:12-12:3).  Mr. Lasoff cuts the turf he

8  purchases from the TurfStore into different shapes and sizes and adds his label to them.  *Id.*

9  (Lasoff Dep. 14:1-14).  He then markets these products under the name "InGrass."  Dkt. # 1 ¶¶ 6,

10  13.

11  On December 1, 2008, Mr. Lasoff accepted the terms of a contract with Amazon Services

12  LLC.  Schelle Decl. ¶5-.  Through the amazon.com marketplace, Mr. Lasoff sold thousands of

13  products to Amazon customers across the country.  *Id.*  This dispute arises because Mr. Lasoff

14  contends that he is the only person authorized to sell products using the InGrass brand name.

15  Dkt. # 1 ¶ 16.  He alleges that other third-party sellers in the amazon.com marketplace offered

16  and sold products that they described as InGrass without his authorization, and that Amazon's

17  automated advertisements for those products are improper.  *Id.* ¶¶ 16, 18.

18  **B.      Third-Party Sellers Provide Content for Product Offerings and Advertisements, and**
    **Are Responsible for Ensuring That the Provided Content and Products Are Lawful.**

19

20  When a third-party seller wants to offer a product for sale on amazon.com, the seller must

21  first determine whether the product already exists in the amazon.com catalog.  Schelle Decl. ¶ 4,

22  Ex. B (ASIN Creation Policy).[2]  Multiple sellers can offer the same product for sale.  *Id.*  If the

23  same product already exists in the catalog, the seller can add specific details – including price

24

25  _____

    [2] Each unique product offered for sale on amazon.com is assigned an Amazon Standard

26  Identification Number ("ASIN").  *Id.* ¶ 4.

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 2
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

88186409.8 0053837-00632

1  and product condition and any additional product details – and their offering is listed, along with

2  other sellers of the same product, on the same page.  *Id.*

3        If the product is not already in the catalog, a third-party seller can create a new product

4  listing.  *Id.* ¶ 9.  To do so, the seller must send Amazon, via an automated file upload system,

5  content related to the new product, including the product description, an image of the product,

6  and the product's price.  *Id.*  This seller-supplied content is then used to automatically generate a

7  "product detail page"[3] and, in some instances, to automatically create advertisements related to

8  the product.  *Id.*; Declaration of Erik Brauner ("Brauner Decl.") ¶ 3.  The third-party seller is

9  responsible for the uploaded content, and specifically represents and warrants that it has the right

10  to grant Amazon a license to use all content, trademarks, and other materials provided by it.

11  Schelle Decl. ¶ 10, Ex. A (Amazon Services Business Solutions Agreement ¶¶ 4, 5 &

12  Definitions, including "Content," "Your Materials," and "Your Trademarks"); Ex. C ("As the

13  creator of a product detail page [the third-party seller] [is] responsible for its initial content[.]").

14        Amazon's role with respect to third-party-submitted content and product offerings is

15  limited and passive.  *Id.* ¶11.  Amazon does not suggest prices for third-party offerings, or

16  generally involve itself in third-party sales except to set parameters on terms and conditions of

17  use.  *Id.*  Those parameters include a third-party seller's agreement to be bound by Amazon's

18  policies, including acknowledgment that "[p]roducts offered for sale on Amazon.com must

19  comply with all laws and regulations and with Amazon's policies."  *Id.* Ex. D.  Under Amazon's

20  Intellectual Property Violations Policy, third-party sellers are responsible for ensuring that the

21  products they offer for sale are legal.  *Id.* Ex. E ("Sellers are responsible for ensuring that the

22  products they offer are legal and authorized for sale or re-sale.").  All products offered by third-

23  party sellers are owned by the third-party sellers, not Amazon.  *Id.* ¶ 10.

24

25      [3] A "product detail page" is a webpage that displays the product offering in the

26  amazon.com marketplace, including the product name, photos, and description.  *Id.* ¶ 9.

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 3
2:16-cv-00151-BJR

1    **C.    Lasoff's Claims Against Amazon Arise from Actions by Third-Party Sellers.**

2    Mr. Lasoff asserts that other third-party sellers did two allegedly improperly things:

3    (1) they listed their products for sale on product detail pages that Mr. Lasoff created for InGrass

4    products; and (2) they listed new products for sale using the name InGrass.  Dkt. # 1 ¶ 16.

5    Amazon has policies that address both alleged violations by third-party sellers.

6    *First*, Amazon's policies explain that sellers may list their products for sale against pages

7    that another seller has created <u>if they are selling the same product</u>:

8
9    **Detail Page Ownership and Image Restrictions:** When a
     detail page is created, it becomes a permanent catalog page on
     Amazon.com that will remain even if the creator's inventory
10   sells out. Additionally, when you add your copyrighted image to
     a detail page, you grant Amazon and its affiliates a non-
11   exclusive, worldwide, royalty-free, perpetual, irrevocable right
     to exercise all rights of publicity over the material.

12
     Other sellers can list their items for sale against pages that you
13   have created or added your copyrighted images to. However,
     we do require sellers to list only against detail pages that
14   exactly match their items. If you believe sellers are listing
     against detail pages that do not exactly match their items, we
15   ask that you report the violation directly by using the <u>contact
     us form</u>.

16

17   *Id.* Ex. G.  *Second*, Amazon's policies expressly prohibit third-party sellers from violating the

18   intellectual property rights of others.  *Id.* Exs. E, F.  If a product listing is determined to be

19   counterfeit, to be in violation of third-party intellectual property rights, or to otherwise violate

20   Amazon's policies, Amazon may block the listing or, in certain circumstances, the third-party

21   seller.  *Id.* ¶ 13.  Before it can act, Amazon must determine whether the reported item or items do

22   actually infringe on another seller's rights.  *Id.*  To do so, Amazon conducts an investigation

23   typically by asking the reporter of the alleged infringement to establish their intellectual property

24   rights, to conduct test purchases of the allegedly-infringing products, and to provide Amazon

25   with material differences between the reporter's product(s) and the alleged infringer's product(s).

26   *Id.*  Amazon requires evidence of infringement for each product that it is asked to take down, as

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 4
2:16-cv-00151-BJR

1    it cannot assume that because one product is infringing, all of that seller's products are

2    infringing.  *Id.*

3    **D.     The Amazon Email and Third-Party Search Engine Advertising At Issue Are Fully Automated.**

4

5    Amazon engages in multiple types of online advertising for the products listed in its

6    marketplace.  Relevant here, this includes email advertising and third-party search engine

7    advertising.  Brauner Decl. ¶ 2.  Third-party search engine advertising and the email advertising

8    at issue in this case are automatically generated based on the user's actions.  *Id.*  Third-party

9    search engine advertising, however, results in the display of ads on search engine websites such

10   as Google, Bing, and Yahoo.  *Id.* ¶ 3.

11   The email advertising at issue in this case is triggered by a user's actions and results in

12   emails sent directly to the consumer.  *Id.*  Third-party search engine advertising is based on

13   users' searches on amazon.com, but it results in the display of ads on search engine websites

14   such as Google, Bing, and Yahoo.  *Id.*  Both the email advertising at issue in this case and third-

15   party search engine advertising are fully automated processes.  *Id.*  They are based on user

16   activity on amazon.com, and no employee at Amazon decides which ads to display, which

17   products appear in those ads, or which keywords to bid on search engines.  *Id.*

18   Here, the third-party listings at issue give rise to Mr. Lasoff's claims against Amazon.

19   Mr. Lasoff contends that Amazon improperly used the InGrass name in advertisements for third-

20   party product offerings in the amazon.com marketplace.  Dkt. # 1 ¶¶ 16, 18.  The advertisements

21   that Mr. Lasoff challenges, however, were automated email advertising and third-party search

22   engine advertising, and thus were automatically generated based on the content provided by

23   third-party sellers.  *See* Brauner Decl. ¶¶ 5, 6, Exs. A, B.

24   **E.     Procedural Background.**

25   The Complaint was filed in the U.S. District Court for the District of New Jersey on April

26   23, 2015.  Dkt. # 1.  In May 2015, Mr. Lasoff filed a motion seeking a preliminary injunction.

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 5
2:16-cv-00151-BJR

88186409.8 0053837-00632

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1  Dkt. # 10, 13.  Specifically, Mr. Lasoff sought to enjoin Amazon from using certain terms,

2  including the words "ingrass" and "ingrass.com" in advertising that Amazon purchased from

3  third-party online search engines.  Dkt. # 10 at p. 3.  Amazon took the position that it had acted

4  lawfully and properly at all times, but in an attempt to avoid the expense of litigating the motion

5  for injunctive relief, Amazon voluntarily stopped bidding on the use of the keywords INGRASS,

6  INGRASS.COM, and WWW.INGRASS.COM in all internet search engines effective June 3,

7  2015.  *See* Dkt. # 12; Brauner Decl. ¶ 9.  On June 24, 2015, Mr. Lasoff voluntarily withdrew his

8  motion for preliminary injunctive relief "in light of [Amazon's] actions to stop bidding" on

9  InGrass.  Dkt. # 17.

10  Mr. Lasoff again moved for preliminary injunctive relief in January 2016.  Dkt. # 22.  On

11  January 28, 2016, the New Jersey District Court transferred the case to the Western District of

12  Washington.  Dkt. # 23, 24.  On February 1, 2016, the Clerk for the Western District of

13  Washington issued a letter related to transfer.  Dkt. # 26.  The letter expressly explained that "[i]f

14  a motion is pending and undecided at the time of transfer, the moving party must note it for

15  consideration on the court's calendar in accordance with LCR 7(d)."  *Id.*  Almost 10 months have

16  passed, and Mr. Lasoff has not re-noted his motion for injunctive relief.

17  Consistent with the Court's Order, the deadline for Amazon to take Mr. Lasoff's

18  deposition was extended pending production of outstanding discovery.  Dkt. # 46.  Mr. Lasoff's

19  deposition was taken on November 21, 2016.  Power Decl. ¶ 2.  Mr. Lasoff sought no

20  depositions from Amazon.  *Id.*  Discovery is closed.  Dkt. # 35.

21  **III.  ARGUMENT**

22  **A.   Legal Standard**

23  Summary judgment is appropriate when, "taking the evidence and all reasonable

24  inferences drawn therefrom in the light most favorable to the non-moving party, there are no

25  genuine issues of material fact and the moving party is entitled to judgment as a matter of law."

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 6
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (internal quotation marks and citation

2    omitted); Fed. R. Civ. P. 56(a).  That is the case here.

3    **B.      The Communications Decency Act Bars All of Lasoff's State Law Claims.**

4            The Communications Decency Act ("CDA") states that "[n]o provider or user of an

5    interactive computer service shall be treated as the publisher or speaker of any information

6    provided by another information content provider."  47 U.S.C. § 230(c)(1).  It also expressly

7    preempts any inconsistent state law.  *Id.* § 230(e)(3).  "The majority of federal circuits have

8    interpreted the CDA to establish broad 'federal immunity to any cause of action that would make

9    service providers liable for information originating with a third-party user of the service.'"

10   *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (*quoting Almeida v.*

11   *Amazon.com, Inc.,* 456 F.3d 1316, 1321 (11th Cir. 2006)); *see also Carafano v.*

12   *Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) (*citing Batzel v. Smith,* 333 F.3d

13   1018, 1026–27 (9th Cir. 2003)).  In *Perfect 10*, the Ninth Circuit held that, even though the CDA

14   excludes  laws "pertaining to intellectual property" from its grant of immunity, that exclusion

15   only applies to *federal* intellectual property law.  *Id.* at 1119.

16           The CDA bars Mr. Lasoff's third, fourth, fifth, sixth, seventh, ninth, and tenth claims for

17   relief.  It is undisputed that Amazon is an "interactive computer service" in that it simply

18   provides a platform for third-party sellers to list and sell their own products.  *See, e.g.*, *Schneider*

19   *v. Amazon.com, Inc.*, 108 Wn. App. 454, 463, 31 P.3d 37 (2001); *Donato v. Moldow*, 865 A.2d

20   711, 719 (N.J. Super. Ct. App. Div. 2005) (*citing Schneider*, 108 Wn. App. at 463); *Almeida v.*

21   *Amazon.Com, Inc.*, No. 04-20004-CIV, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004) ("It is

22   irrefutable that Defendant Amazon is an 'interactive computer service.'"), *aff'd*, 456 F.3d 1316

23   (11th Cir. 2006).  The third-party sellers who list their products on amazon.com are "information

24   content providers" under the CDA.  As discussed above, Mr. Lasoff's claims all stem from

25   alleged misrepresentations made by third-party sellers on amazon.com, whether these

26   misrepresentations end up on Amazon's web page or in its automated advertisements.  Pursuant

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 7
2:16-cv-00151-BJR

1    to the CDA, Amazon cannot be liable for any information provided by third-party sellers.  *See*

2    *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004)

3    ("[Plaintiff]'s claims are barred unless Amazon 'created or developed the particular information

4    at issue.'" (*quoting Carafano*, 339 F.3d at 1125)); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117,

5    1123 (E.D. Cal. 2010) (holding that Google was immune because it did not provide the content

6    of its search engine ads).  All of Mr. Lasoff's state law claims therefore fail as a matter of law.

7    **C.      Lasoff Cannot Sustain a Claim for Trademark Infringement or Unfair Competition.**

8             Mr. Lasoff asserts claims for trademark infringement and unfair competition under the

9    Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  *See* Dkt. # 1 (Count I).  Specifically, Mr. Lasoff

10   contends that Amazon is liable for its "online advertisement and marketing use of the InGrass

11   trade name in a manner that is likely to cause, and has actually caused, confusion, mistake, and

12   deception as to the sponsorship, endorsement, and/or affiliation, connection, or association

13   between InGrass and [Amazon]'s product which is materially misrepresenting InGrass."  Dkt. #

14   1 ¶ 52.  To establish a trademark infringement claim, "a plaintiff must prove two basic elements:

15   '(1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to

16   cause confusion.'"  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (*quoting*

17   *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)).  Mr. Lasoff fails on

18   both fronts.

19            **1.      Lasoff Has Established No Evidence of a Valid, Protectable Trademark.**

20            Mr. Lasoff asserts a right in the name InGrass as a "brand of artificial turf products."

21   Dkt. # 1 ¶ 13.  Mr. Lasoff describes the name "InGrass" interchangeably as a "brand," "trade

22   name," and "trademark."[4]  But InGrass is not a registered mark[5] under either federal or state law.

23            [4] *See* Dkt. # 1 ¶ 10 ("Since 2004, Lasoff has used the **trademark** 'InGrass.'"); ¶ 13
24   ("Lasoff also sold his InGrass **brand** of artificial turf products on online marketplaces."); ¶ 16
     ("Lasoff is the sole and exclusive owner of the InGrass **brand**."); ¶ 18 ("keywords relating to his
     **brand**, including the search terms 'InGrass,' and 'InGrass.com'"); ¶ 19 ("Lasoff emailed
25   Customer Support at Amazon for help with the situation involving the misuse of the InGrass
     **brand**."); ¶ 26 (contending Amazon is responsible for "knowingly advertising and promoting the
26                                                                                    (continued . . .)

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 8
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

88186409.8 0053837-00632

1    *See* Power Decl., Ex. B at Responses to Request for Admission Nos. 1-2 (admitting that "neither

2    of the marks 'Ingrass' or 'ingrass.com' are registered as trademarks with the United States Patent

3    and Trademark Office" or any state trademark registration office).  Nor is InGrass registered as a

4    trade name or assumed business name in any state.  *Id.* at Request No. 3.  As such, there is no

5    presumption of validity.  *See* 15 U.S.C. §§ 1057(b), 1115(a); *KP Permanent Make-Up, Inc. v.*

6    *Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005).

7            To establish validity, Mr. Lasoff bears the burden of establishing both ownership and

8    protectability.  *S. Cal. Darts Ass'n*, 762 F.3d at 929.  For purposes of summary judgment only,

9    Amazon does not challenge Mr. Lasoff's asserted ownership of the InGrass mark.  Amazon does

10   challenge Mr. Lasoff's evidence of protectability, which is grossly insufficient.  Indeed, Mr.

11   Lasoff's testimony as to the basis for protectability of the mark is simply that he registered it as a

12   domain name.  Power Decl., Ex. A (Lasoff Dep. 46:25-48:11).

13           "Whether a mark is protectable depends on its degree of 'distinctiveness.'"  *S. Cal. Darts*

14   *Ass'n*, 762 F.3d at 929 (*citing Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113

15   (9th Cir. 2010)).  There are five categories of increasing distinctiveness: generic, descriptive,

16   suggestive, arbitrary, and fanciful.[6]  *Id.*  Based on Mr. Lasoff's testimony that InGrass is just

17   "short for It's Not Grass" and the fact that InGrass describes the product itself, as a form of

18   grass, the InGrass mark is of a descriptive nature.  *See* Power Decl., Ex. A (Lasoff Dep. 10:20-

19   (. . . continued)
     InGrass ***brand*** amongst major online search engines"); ¶ 27 ("infringement of InGrass's ***trade***
20   ***name*** in Amazon's online search engine advertisements"); ¶ 32 (referencing "products falsely
     representing the InGrass ***brand***"); ¶ 38 (referencing the "***trademark*** InGrass on Amazon"); ¶ 39
21   (referencing advertising of the "InGrass ***trade name***"); ¶ 46 ("advertise the 'InGrass' trade name
     and Marks"); ¶ 52 ("Defendant's online advertisement and marketing use of the InGrass ***trade***
22   ***name***") (all emphases added).
            [5] For purposes of summary judgment and ease of reference in briefing, Amazon uses the
23   term "mark" with respect to the name "InGrass."
            [6] Generic marks are not eligible for protection.  *Entrepreneur Media, Inc. v. Smith,* 279
24   F.3d 1135, 1141 (9th Cir. 2002).  Descriptive marks are protectable if they acquire a "secondary
     meaning" by becoming distinctive.  *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769,
25   112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992).  Suggestive, arbitrary, and fanciful marks are
     automatically protectable.  *Id.*
26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 9
2:16-cv-00151-BJR

1    25); *Meth Lab Cleanup, LLC v. Bio Clean, Inc.,* No. C14-1259RAJ, 2016 WL 4539564, at *7

2    (W.D. Wash. Aug. 31, 2016) (*quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189,

3    194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985) ("A descriptive mark is a mark that 'describes the

4    qualities or characteristics of a good or service.'")).  Mr. Lasoff must thus establish that the mark

5    has acquired secondary meaning, which he has failed to do.  *See Two Pesos, Inc. v. Taco*

6    *Cabana, Inc.,* 505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992).

7          To determine whether a mark has acquired secondary meaning, factors considered

8    include: (1) whether actual purchasers of the product bearing the claimed trademark associate the

9    trademark with the producer; (2) the degree and manner of advertising under the claimed

10   trademark; (3) the length and manner of use of the claimed trademark; and (4) whether use of the

11   claimed trademark has been exclusive.  *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352,

12   1355 (9th Cir. 1985).  Here, there is no evidence that purchasers of artificial turf with the InGrass

13   mark associate the mark with Mr. Lasoff, the producer.  With respect to the degree and manner

14   of advertising under the mark, the only evidence is that Mr. Lasoff purchased Google ad words;

15   there is no evidence of the words purchased or any marketing plan associated with the purchases.

16   *See* Power Decl., Ex. B (Response to Interrogatory No. 12).  As for the length and manner of use

17   of the claimed mark and whether use has been exclusive, Mr. Lasoff contends that he created the

18   InGrass mark in 2004, he has used it in business since that time, and he is the exclusive owner of

19   the mark.  *Id.* (Response to Interrogatory Nos. 11, 15).  But Mr. Lasoff concedes that if a third-

20   party seller in the amazon.com marketplace sources its artificial turf from the same place as Mr.

21   Lasoff (the TurfStore), that seller could list their product for sale on a product detail page for

22   InGrass.  *Id.*, Ex. A (Lasoff Dep. 22:9-15).  In other words, use of the claimed mark is not

23   exclusive.  For these reasons, Mr. Lasoff has failed to meet his burden of proving that the

24   InGrass mark is protectable.

25

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 10
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

1       **2.     There Is No Evidence Establishing Likelihood of Customer Confusion**
        **Because Amazon Itself Has Not "Used" the InGrass Mark.**
2

3       Even if the Court does not summarily dismiss Mr. Lasoff's Lanham Act claim due to his

4   lack of a protectable mark, his claim still fails.  To prove direct infringement, a defendant must

5   "use" a mark in a manner that is likely to cause confusion, mistake, or deception.  *See* 15 U.S.C.

6   § 1125(a)(1)(A).  While courts generally engage in an analysis of multiple factors to determine

7   likelihood of confusion (*see AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979),

8   *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792,

9   810 (9th Cir. 2003)), that analysis is not necessary here because Amazon itself did not "use" the

10  mark.

11      An entity does not "use" a mark merely by providing a forum in which a third-party

12  vendor may display the mark in connection with an offer to sell goods.  *Fonovisa, Inc. v. Cherry*

13  *Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996); *Hard Rock Cafe Licensing Corp. v. Concession*

14  *Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992).  For example, in both *Fonovisa* and *Hard Rock Cafe*,

15  the Ninth and Seventh Circuits, respectively, analyzed whether flea market operators were liable

16  for *contributory* trademark infringement based on infringing use of a mark by third-party

17  vendors who sold counterfeit items at the flea market.  The plaintiffs were forced to allege

18  *contributory* (rather than direct, as asserted here) trademark infringement because the operators –

19  who provided only a forum for the third-party vendors – *did not themselves use the mark*.  All

20  prohibited uses of the marks were attributable only to the third-party vendors.

21      Here, like the operators in *Fonovisa* and *Hard Rock Cafe*, Amazon merely provides a

22  marketplace where third-party sellers may offer goods for sale.  By providing this marketplace to

23  numerous third-party sellers, Amazon does not "use" any marks or other information supplied by

24  a third-party seller.  Nor does Amazon "use" the mark when ads are automatically generated

25  based on third-party listings.  Rather, such use is properly attributable to the third-party sellers.

26  It is undisputed that third-party sellers, not Amazon, listed their products on detail pages created

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 11
2:16-cv-00151-BJR

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

1    by InGrass or supplied their own materials (photos, product descriptions, prices) to create new

2    pages.  Schelle Decl. ¶ 14.  Consistent with *Fonovisa* and *Hard Rock Cafe,* to the extent there is

3    any likelihood of customer confusion, any prohibited use of the mark was attributable only to

4    third-party sellers.

5    **3.      Amazon, as an Online Intermediary, Cannot Be Held Liable for Trademark
         Infringement Under 15 U.S.C. § 1125(a)(1)(A).**

6

7    Even if the Court finds that a genuine issue of fact exists regarding Amazon's "use" of

8    the InGrass mark, such use is permitted under the rationale set forth by the Second Circuit in

9    *Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93 (2d Cir. 2010).[7]  In *Tiffany*, the Second Circuit

10   addressed whether an online intermediary that facilitates transactions between a buyer and seller

11   (eBay) could be held liable for trademark infringement based on the intermediary's alleged use

12   of a mark held by the jewelry seller Tiffany.  As an initial matter, the *Tiffany* court held that

13   because trademark law does "not prevent one who trades a branded product from accurately

14   describing it by its brand name, so long as the trader does not create confusion by implying an

15   affiliation with the owner of the product," eBay's use of the mark to sell *genuine* Tiffany goods

16   was lawful.  600 F.3d  at 103 (internal quotation marks and citation omitted).  Noting that "'eBay

17   consistently took steps to improve its technology and develop anti-fraud measures as such

18   measures became technologically feasible and reasonably available,'" the court further held that

19   eBay could not be held liable for direct trademark infringement based on use of Tiffany's mark

20   in connection with the sale of *counterfeit* jewelry simply "because eBay cannot guarantee the

21   _____

     [7] Although the trademark infringement claim in *Tiffany* was brought under 15 U.S.C. §
22   1114 (because Tiffany's mark was registered), the analysis does not change when the trademark
     infringement claim is brought under 15 U.S.C. § 1125(a)(1)(A) (for unregistered marks).  As
23   explained in *McCarthy on Trademarks and Unfair Competition*, "[w]hen [15 U.S.C. §
     1125(a)(1)(A)] is used as a federal vehicle for assertion of traditional claims of infringement of
24   trademarks, . . . the courts have used as substantive law the traditional rules of trademarks and
     unfair competition law.  The clear message of the U.S. Supreme Court's 1992 *Taco Cabana* case
25   is that the general rules of trademark validity and infringement are to be applied to infringement
     claims brought under [15 U.S.C. § 1125(a)(1)(A)]."  J. Thomas McCarthy, 5 *McCarthy on*
26   *Trademarks and Unfair Competition* § 27:18, at 27-37, Westlaw (database updated Dec. 2016).

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 12
2:16-cv-00151-BJR

1   genuineness of all of the purported Tiffany products offered on its website." *Id.* at 100, 103

2   (*quoting* trial court).  "To impose [such] liability," the court reasoned, "would unduly inhibit the

3   lawful resale of genuine Tiffany goods."  *Id*. at 103.

4        The California Court of Appeal came to the same conclusion in *Tre Milano, LLC v.*

5   *Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012).  In that case,

6   the plaintiff accused Amazon of trademark infringement based on Amazon's alleged use (via the

7   amazon.com marketplace) of Tre Milano's mark in connection with the sale of allegedly

8   counterfeit Tre Milano Hair Straighteners.  *Id.* at *1.  The straighteners were sold through the

9   amazon.com website by third-party sellers.  *Id.*  The court, citing *Tiffany*, held that Amazon did

10   not infringe Tre Milano's trademark rights.  *Id.* at *12.  The same reasoning applies here.

11        Like the defendant in *Tiffany*, Amazon, as the provider of an online retail marketplace

12   that facilitates transactions between third-party sellers and buyers, did not "use" the InGrass

13   mark.  But even if there were a disputed factual issue about whether Amazon "uses" any

14   allegedly false designation of origin (merely by providing a forum that allows third-party sellers

15   to supply information regarding their products), such alleged "use" does not create a basis for

16   liability under a theory of direct infringement.  *See Tiffany*, 600 F.3d at 103 (finding no grounds

17   for direct infringement).  Accordingly, summary judgment dismissing Mr. Lasoff's claim of

18   trademark infringement under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act is warranted.

19       **4.**    **Lasoff's State and Common Law Claims for Trademark Infringement and Unfair Competition Fail for the Same Reasons as His Lanham Act Claim.**

20

21        In addition to his Lanham Act claim for trademark infringement and unfair competition,

22   Mr. Lasoff has asserted separate claims for unfair competition and trademark infringement under

23   New Jersey's trademark statute, N.J. Stat. Ann. §§ 56:3, 56-4, and for unfair competition under

24   New Jersey common law.  Complaint, Dkt. # 1 ¶¶ 62-77.  Washington law applies to these

25

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 13
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

88186409.8 0053837-00632

1    claims.[8]  In addition to being barred by the CDA, these state law claims fail for the same reason

2    as Mr. Lasoff's federal claim for trademark infringement and unfair competition.  *See*

3    *eAcceleration Corp. v. Trend Micro, Inc.,* 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006);

4    *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 742-43, 733 P.2d 208 (1987).

5    **D.     Lasoff Cannot Establish a False Advertising Claim.**

6           Mr. Lasoff's derivative claim for false advertising likewise fails as a matter of law.  Mr.

7    Lasoff contends that Amazon's automatically generated advertisements were "literally false."

8    Dkt. # 1 ¶ 57.  The Lanham Act imposes liability for a party who, "in commercial advertising or

9    promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her

10   or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  To

11   prevail on a false advertising claim, a plaintiff must prove:

12

13              (1) the defendant made a false statement of fact about a product in
                a commercial advertisement, (2) the statement actually deceives or
                has the tendency to deceive a substantial segment of its audience,

14              (3) the deception is material, (4) the defendant caused the false
                statement to enter interstate commerce, and (5) the plaintiff has

15              been or is likely to be injured as a result of the false statement.

16   _____

17         [8] Where pendent state-law claims are asserted with one or more federal claims, district
     courts follow the choice-of-law rules of the forum state. *See Paracor Fin., Inc. v. Gen. Elec.*

18   *Capital Corp.*, 96 F.3d 1151, 1165 n.17 (9th Cir. 1996).  Under this state's choice-of-law rules,
     Washington law applies unless there is "an actual conflict between the laws or interests of

19   Washington and the laws or interests of another state." *Seizer v. Sessions*, 132 Wn.2d 642, 648,
     940 P.2d 261 (1997).  An "actual conflict" exists if the application of another state's law would

20   produce a different result on a particular legal issue. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d
     676, 692, 167 P.3d 1112 (2007).  If an actual conflict exists, the Court applies the "most

21   significant relationship" test to determine which state's law applies. *Johnson v. Spider Staging
     Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976).

22          There is no substantive difference between Washington and New Jersey law with respect
     to trademark infringement and unfair competition because both are consistent with federal

23   courts' interpretations of the Lanham Act.  *See, e.g.*, N.J. Stat. Ann. § 56:3-13a; RCW §
     19.77.930; *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d

24   Cir. 1994); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir.
     1980).  Mr. Lasoff admits as much in his Complaint.  *See, e.g.*, Dkt. # 1 ¶¶ 63, 70 (elements of

25   state and federal claims are same).  Because there is no substantive difference between
     Washington and New Jersey law, the law of the forum state – Washington – applies.

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 14
2:16-cv-00151-BJR

1    *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir.

2    2010) (*citing Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

3    Amazon itself, however, has made no false statement of fact in its advertisements.

4         Mr. Lasoff takes issue with Amazon's advertisements that are automatically generated

5    using third-party seller content.  Those advertisements, however, truthfully depict product

6    offerings for sale on amazon.com.  That is because they display products that, based on the

7    representation of third-party sellers, are offered for sale in the amazon.com marketplace.  To the

8    extent that any false statement of fact has occurred, such statements stem from the underlying

9    actions of third-party sellers, not Amazon.

10        The Fourth Circuit Court of Appeals reached the same conclusion in *Baldino's Lock &*

11   *Key Service, Inc. v. Google Inc.*, 624 F. App'x 81, 82 (4th Cir. 2015).  In that case, the plaintiff, a

12   licensed locksmith company, sued Google for false advertising under the Lanham Act for

13   advertising multiple unlicensed locksmiths operating in Maryland and Virginia.  *Baldino's Lock*

14   *& Key Service, Inc. v. Google Inc.*, 88 F. Supp. 3d 543, 546 (E.D. Va. 2015).  The district court

15   dismissed the false advertising claim, holding that that the plaintiff failed to satisfy the first

16   element because it was the unlicensed locksmiths who had made the false statements appearing

17   in the ads: "To hold Defendants liable for misinformation appearing on their websites, which

18   originated with third parties, is a drastic conclusion the Court declines to endorse."  *Id.* at 551.

19   The Fourth Circuit affirmed, holding that "Baldino's failed to show that the Defendants made

20   any representations.  Rather, the locksmiths who generated the information that appeared on

21   Defendants' websites are solely responsible for making any faulty or misleading representations

22   or descriptions of fact."  *Baldino's Lock & Key Serv., Inc.*, 624 F. App'x at 82.  The same

23   reasoning applies here.  Because the statements at issue were made by third parties, not Amazon,

24   Mr. Lasoff cannot satisfy the first element of his false advertising claim and it thus fails as a

25   matter of law.

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 15
2:16-cv-00151-BJR

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    **E.    Lasoff Cannot Establish a Claim for Monopolization.**

2    Mr. Lasoff's claim under the Sherman Act is implausible on its face.  To state a claim for

3    monopolization, a plaintiff must first define the relevant market.  *Forsyth v. Humana, Inc.*, 114

4    F.3d 1467, 1476 (9th Cir. 1997).  "Failure to identify a relevant market is a proper ground for

5    dismissing a Sherman Act claim."  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir.

6    2001).  Because Mr. Lasoff has not and cannot establish a relevant market, his Sherman Act

7    claim fails.

8    "The relevant market is the field in which meaningful competition is said to exist . . .

9    [and] is defined in terms of product and geography."  *Image Tech. Servs., Inc. v. Eastman Kodak*

10   *Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) (citations omitted).  "Without a proper definition of the

11   relevant market, it is impossible to determine a party's influence over that market."  *Id.* at 1203.

12   A relevant product market is generally defined as "'the pool of goods or services that enjoy

13   reasonable interchangeability of use and cross-elasticity of demand.'"  *Tanaka*, 252 F.3d at 1063

14   (citation omitted).

15   Here, Mr. Lasoff defines the relevant market by alleging that Amazon has "monopolized

16   advertising of artificial turf in online search engines."  *See* Dkt. # 1 ¶ 95.  The market is both ill-

17   defined and misguided.  Amazon does not operate third-party online search engines.  Amazon is

18   itself a buyer of advertising from online search engines such as Google, Yahoo, and Bing.

19   Brauner Decl. ¶ 6.  Mr. Lasoff admits the same.  Dkt. # 1 ¶ 44 ("Amazon pays major search

20   engines like Google, Bing, etc. for advertising space in their platforms.").

21   Mr. Lasoff is actually asserting a buyer's side monopoly, or monopsony, involving

22   purchasers of online search advertising.  In monopsony[9] cases, "the market is not the market of

23   competing sellers but of competing buyers.  This market is comprised of buyers who are seen by

24   _____

25   [9] *See United States v. Syufy Enters.*, 903 F.2d 659, 663 n.7 (9th Cir. 1990) (*quoting* R.
     Lipsey, P. Steiner & D. Purvis, *Economics* 976 (7th ed. 1984)) ("Monopsony is defined as a

26   'market situation in which there is a single buyer or a group of buyers making joint decisions.'").

1   sellers as being reasonably good substitutes." *Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir.

2   2001) (*quoting* Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy and Monopsony*, 76

3   Cornell L. Rev. 297, 324 (1991)).  "The proper focus is . . . the commonality and

4   interchangeability of the buyers, not the commonality or interchangeability of the sellers." *Id.*  In

5   other words, the relevant market would need to be defined by the commonality and

6   interchangeability of purchasers of advertising from online search engines for artificial turf.

7   Applied here, Mr. Lasoff's claim simply does not pass legal muster.

8       First, the market alleged by Mr. Lasoff is insufficient because "[s]earch-based advertising

9   is reasonably interchangeable with other forms of Internet advertising."  *See Person v. Google,*

10  *Inc.*, No. C06-7297JF(RS), 2007 WL 832941, at *4 (N.D. Cal. Mar. 16, 2007).  As such, the

11  *Person* court found "no basis for distinguishing the [search advertising market] from the larger

12  market for Internet advertising" and held that the "'[search advertising market] thus is too narrow

13  to form a relevant market for antitrust purposes." *Id.*  The same reasoning applies here.

14      Second, Mr. Lasoff makes no attempt to define or address the commonality or

15  interchangeability of purchasers of advertising from online search engines for artificial turf.  On

16  that basis as well, his claim is subject to dismissal.  *See In re eBay Seller Antitrust Litig.,* 545 F.

17  Supp. 2d 1027, 1031 (*quoting Queen City Pizza, Inc. v. Domino's Pizza Inc.,* 124 F.3d 430, 436

18  (3d Cir. 1997)) (Sherman Act claim subject to dismissal where plaintiff "fails to define [the]

19  proposed relevant market with reference to the rule of reasonable interchangeability and cross-

20  elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all

21  interchangeable substitute products."); *see also Newcal Indus., Inc. v. Ikon Office Sol.,* 513 F.3d

22  1038, 1045 (9th Cir. 2008) (*citing Queen City Pizza,* 124 F.3d at 436-37) (court may dismiss

23  where relevant market is "facially unsustainable").  Further, a buyer of goods or services cannot

24  obtain a monopsony where, as here, multiple alternative buyers are available.  *See U.S.*

25  *Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 598 (1st Cir. 1993) (monopsony impossible

26  for buyer of doctor's services "because doctors have too many alternative buyers for their

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 17
2:16-cv-00151-BJR

1    services"). Mr. Lasoff admits as much. *See* Dkt. # 1-4 (referencing buyers of search advertising

2    in 2013 from online search engine Google, including Amazon, Priceline, AT&T, Expedia,

3    Microsoft, Experian, Walmart, and Sears). Given these facts, Mr. Lasoff cannot establish a

4    relevant market. His claim under the Sherman Act should be dismissed.[10]

5    **F.      Lasoff's Tort Claims Are Barred by the Economic Loss Doctrine.**

6           Mr. Lasoff asserts a right to lost profit damages based on tort claims for gross negligence

7    and tortious interference with prospective economic advantage.[11] Dkt. # 1 ¶¶ 78-91. Both

8    claims are barred by Washington's economic loss doctrine, which prohibits a plaintiff from

9    recovering purely economic damages in tort when the plaintiff's entitlement to damages is based

10   in contract. *Alejandre v. Bull*, 159 Wn.2d 674, 683, 153 P.3d 864 (2007).[12] "[T]he purpose of

11   the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual

12   relationship exists and the losses are economic losses." *Id.* "[W]hen parties have contracted to

13   protect against potential economic liability, . . . contract principles override the tort principles in

14   [Restatement (Second) of Torts § 552 (1977)] and, thus, purely economic damages are not

15   ───────────────

16        [10] Even if Mr. Lasoff established a relevant market, which he has not, he could not
     establish that Amazon has "monopoly power" in that market. That is because Amazon does not

17   operate third-party search engines, and thus cannot exclude competition or control prices set by
     third-party search engines for online advertising. *See Syufy Enterprises*, 903 F.2d at 664 (*citing*

18   *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S. Ct. 994, 100 L. Ed.
     1264 (1956) ("[M]onopoly power is the power to exclude competition or control prices.")).

19        [11] There is no substantive difference between Washington and New Jersey law with
     respect to gross negligence and tortious interference. *See, e.g.*, *Johnson v. Spokane to Sandpoint,*

20   *LLC*, 176 Wn. App. 453, 460, 309 P.3d 528 (2013) (*quoting* 6 Washington Practice: Washington
     Pattern Jury Instructions: Civil 10.07 (6th ed. 1997) ("'[G]ross negligence' [is] 'the failure to

21   exercise slight care.'"); *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 567-68 (N.J. Super. Ct.
     Law Div. 2015) (*quoting* Model Jury Charges (Civil) (2004), "Gross Negligence" ("Ordinary

22   negligence is converted to gross negligence when a defendant fails, for example, 'to exercise a
     slight degree of care' . . . ."); *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 168, 273

23   P.3d 965 (2012) (listing elements for tortious interference); *Printing Mart-Morristown v. Sharp
     Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989) (same). As such, Washington law applies. *See Seizer*,

24   132 Wn.2d at 648.
          [12] The economic loss doctrine is also known as the "independent duty rule" because

25   parties to a contract may recover in tort for economic losses only if "the defendant's alleged
     misconduct implicates a tort duty that arises independently of the terms of the contract."

26   *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 393, 241 P.3d 1256 (2010).

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1   recoverable." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wn.2d 816, 828,

2   881 P.2d 986 (1994).

3       Here, Mr. Lasoff seeks to recover in tort for a purely economic loss (sales), despite the

4   fact that he entered into a contract with Amazon – the BSA and incorporated policies – that

5   expressly allocates the parties' rights and responsibilities with respect to the sale of InGrass

6   products on amazon.com.  *See* Schelle Decl., Ex. A (BSA) ¶ 8 ("We will not be liable (whether

7   in contract, warranty, tort (including negligence, product liability, or other theory), or otherwise)

8   to you or any other person for . . . any loss of profit . . . arising out of or relating to this

9   agreement.").  Further, by entering into the BSA, Mr. Lasoff granted Amazon a "perpetual,

10  irrevocable right and license to use" the InGrass mark in any manner.  *Id.* ¶ 4.  This license

11  survives termination.  *Id.* ¶¶ 3, 4.  Given these facts, Mr. Lasoff's tort claims are barred by the

12  economic loss doctrine.  *See Elcon Constr., Inc. v. E. Wash. Univ.*, 151 Wn. App. 1062, 273 P.3d

13  965 (2009), *aff'd on other grounds*, 174 Wn.2d 157 (2012) (economic loss rule bars intentional

14  interference claim against party in privity); *Alejandre*, 159 Wn.2d at 685-86 (doctrine bars party

15  in privity from asserting negligence claim for purely economic loss).

16      Even if the economic loss doctrine does not preclude Mr. Lasoff's tort claims, they fail

17  on the merits.  In alleging gross negligence, Mr. Lasoff contends that Amazon had a duty to

18  prevent trademark infringement.  Dkt. # 1 ¶ 87.  Mr. Lasoff offers no basis for this assertion of

19  Amazon's alleged duty outside of the parties' contract.  To state a claim for gross negligence,

20  there must be "substantial evidence of serious negligence."  *See Boyce v. West*, 71 Wn. App. 657,

21  665, 862 P.2d 592 (1993).  Contrary to Mr. Lasoff's contentions, Amazon has contracts, policies,

22  and procedures in place to protect against trademark infringement by third-party sellers.  Those

23  include, for example, the BSA (under which third-party sellers represent and warrant that they

24  have "all requisite right, power and authority" to "grant the rights, licenses, and authorizations"

25  required under the BSA, including Amazon's license to use third-party sellers' trademarks); the

26  Anti-Counterfeiting Policy; the Intellectual Property Violations Policy; and reporting forms and

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 19
2:16-cv-00151-BJR

1    procedures for notifying Amazon of alleged infringement (Report Infringement form and Report

2    a Violation form).  *See* Schelle Decl., Exs. A, E, F, G & H.  In light of these facts, and Mr.

3    Lasoff's gross negligence claim should be dismissed.

4            Mr. Lasoff also contends that Amazon tortiously interfered with his prospective business

5    expectations by failing to take down offerings of allegedly counterfeit InGrass products listed by

6    other third-party sellers.  Dkt. # 1 ¶ 81.  A party claiming tortious interference with a contractual

7    relationship or business expectancy must prove five elements:

8            (1) the existence of a valid contractual relationship or business
             expectancy; (2) that defendants had knowledge of that relationship;
9            (3) an intentional interference inducing or causing a breach or
             termination of the relationship or expectancy; (4) that defendants
10           interfered for an improper purpose or used improper means; and
             (5) resultant damage.

11

12   *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).  While

13   not conceding that Mr. Lasoff has established other elements, it is plain that he cannot satisfy the

14   third or fourth elements.  There is no evidence that Amazon acted intentionally to interfere with

15   Mr. Lasoff's business.  To the contrary, Mr. Lasoff admits that Amazon did take action to

16   remove certain third-party listings, but just contends that Amazon did not act quickly enough.

17   Complaint ¶¶ 19-33.  This does not constitute intentional interference.  Even if Mr. Lasoff could

18   set forth the third element, he cannot show that Amazon *caused* a termination of his business

19   expectancy.  *See Woods View II, LLC v. Kitsap County*, 188 Wn. App. 1, 31, 352 P.3d 807 (third

20   element not satisfied if interference does not cause loss of business relationship), *review denied*,

21   184 Wn.2d 1015 (2015).  Instead, to the extent there was a cause of Mr. Lasoff's alleged loss of

22   sales, it would have stemmed from third-party offerings.

23           Nor can Mr. Lasoff prove the fourth element because he cannot show improper means or

24   improper purpose.  This element is only satisfied where the "'interference resulting in injury to

25   another is wrongful by some measure beyond the fact of the interference itself.'"  *Pleas v. City of*

26   *Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989) (en banc) (*quoting Top Serv. Body Shop, Inc.*

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 20
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   *v. Allstate Ins. Co.*,  582 P.2d 1365, 1368 (Or. 1978)).  Amazon did not engage in any wrongful

2   conduct that would constitute improper means.  In fact, Mr. Lasoff's allegation is that Amazon

3   did nothing when it had a duty to act.  Without some evidence that Amazon committed a

4   wrongful act beyond the alleged interference itself, Mr. Lasoff's tortious interference claim fails.

5   Likewise, there is no evidence of improper purpose.  Amazon has no incentive to allow

6   counterfeit products to be offered for sale in the amazon.com marketplace.  To the contrary,

7   Amazon has a vested interest in its customers being able to rely upon the genuineness of

8   Amazon's listed products.  *See* Schelle Decl., Ex. F (Anti-Counterfeiting Policy) ("Customers

9   trust that they can always buy with confidence on Amazon.com. Products offered for sale on

10  Amazon.com must be authentic. The sale of counterfeit products, including any products that

11  have been illegally replicated, reproduced, or manufactured, is strictly prohibited.").  Because

12  Mr. Lasoff cannot prove at least the third or fourth elements of his claim for tortious interference,

13  the claim fails as a matter of law.

14  **G.    Lasoff Cannot State a Claim for Unjust Enrichment.**

15          Mr. Lasoff claims that Amazon was unjustly enriched when it used the name InGrass in

16  online search advertising that directed users to products offered by other third-party sellers.  Dkt.

17  # 1 ¶ 102.  To establish a claim for unjust enrichment, Mr. Lasoff must show that: (1) he

18  conferred a benefit on Amazon; (2) Amazon had knowledge of the benefit; and (3) Amazon's

19  acceptance/retention of the benefit without payment of its value is inequitable.  *See Young v.*

20  *Young,* 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).[13]  But as a threshold matter, a claim for

21  unjust enrichment is barred by the existence of an express contract governing the same issue.

22  *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 145, 323 P.3d 1036 (2014)

23  (*quoting Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943)) ("A

24  _____

25          [13] There is no substantive difference in a claim for unjust enrichment under New Jersey
     law.  *See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (listing elements).
26  Therefore, Washington law applies.  *Seizer*, 132 Wn.2d at 648.

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 21
2:16-cv-00151-BJR

1  party to a valid express contract is bound by the provisions of that contract, and may not

2  disregard the same and bring an action on an implied contract relating to the same matter, in

3  contravention of the express contract.")).  That is the case here.

4        Mr. Lasoff fails to identify the specific benefit he allegedly conferred on Amazon, but

5  presumably it was the right to use of the InGrass mark.  What Mr. Lasoff fails to recognize is the

6  legal import of the fact that any such benefit would indisputably have been pursuant to the terms

7  of the BSA.  Under the BSA, Mr. Lasoff expressly granted Amazon a license for use of all

8  trademarks and other materials in advertising.  *See* Schelle Decl., Ex. A ¶ 4 ("You grant us a []

9  perpetual . . . license . . . .") & Definitions ("Your Materials" means "Your Trademarks").  Even

10  if the Court accepts as true Mr. Lasoff's assertion that he terminated the BSA, it does not matter.

11  The license that Mr. Lasoff granted Amazon under the BSA survives termination of the contract.

12  *Id.* ¶ 3 ("Section[] . . . 4 . . . will survive termination.").  As such, because Mr. Lasoff's unjust

13  enrichment claim arises under the express subject matter of the BSA, his unjust enrichment claim

14  fails.  *See Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1173 (W.D.

15  Wash. 2014) (dismissing unjust enrichment claim asserted by third-party seller against Amazon,

16  reasoning that "to support the first element, Plaintiff would necessarily need to acknowledge that

17  it 'conferred a benefit' upon Amazon pursuant to a contract which allowed Amazon to collect

18  funds on behalf of [the seller]. Thus, it is clear that the issue arises under a contract's express

19  subject matter and may not be the basis of an unjust enrichment claim.").

20  **H.**    **Lasoff Cannot State a Claim for Promissory Estoppel.**

21        Mr. Lasoff alleges that Amazon promised to "cease all infringement of [his] mark" and

22  that he relied on this alleged promise to his detriment, suffering damages as a result.  Dkt. # 1 ¶¶

23  107-09.  But, as with unjust enrichment, "the doctrine of promissory estoppel does not apply

24  where a contract governs."  *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 129

25  Wn. App. 303, 317, 119 P.3d 854 (2005) (*citing Klinke v. Famous Recipe Fried Chicken, Inc.,*

26  94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980)).  Because the BSA and incorporated policies

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 22
2:16-cv-00151-BJR

1    expressly address Amazon's right to use the InGrass mark and the parties' respective

2    responsibilities regarding alleged infringement by third-party sellers, Mr. Lasoff's claim for

3    promissory estoppel is barred.  *See* Schelle Decl., Ex. A (BSA) ¶ 4 (providing irrevocable license

4    for Amazon to use InGrass mark in advertisements) & ¶ 18 (integration clause); Exs. G, H.

5         Even if the promissory estoppel claim were not barred by the BSA, the claim still fails on

6    its merits.  "Promissory estoppel has five elements: '(1) [a] promise which (2) the promisor

7    should reasonably expect to cause the promisee to change his position and (3) which does cause

8    the promisee to change his position (4) justifiably relying upon the promise, in such a manner

9    that (5) injustice can be avoided only by enforcement of the promise.'"  *Becker v. Wash. State*

10   *Univ.*, 165 Wn. App. 235, 249, 266 P.3d 893 (2011) (alteration in original) (*quoting Havens v. C*

11   *& D Plastics, Inc.,* 124 Wn.2d 158, 171-72, 876 P.2d 435 (1994)).[14]  Specifically, Mr. Lasoff

12   contends that "Defendant [Amazon] made a promise to Plaintiff, namely that Defendant would

13   cease all infringement of Plaintiff's mark."  Dkt. # 1 ¶ 107.  He alleges that the promise was

14   made "in countless emails through countless agents to Plaintiff directly."  *Id.*  But Mr. Lasoff has

15   produced no evidence reflecting such a promise.  That is because from the outset Amazon has

16   explained to Mr. Lasoff that his "allegations related to infringement are against the third-party

17   sellers that are using your alleged mark, and not against Amazon."  *Id.* ¶ 25.  Mr. Lasoff cannot

18   establish that Amazon promised to "cease all [of its] infringement" because Amazon explained

19   that it was not engaged in infringement, and his claim for promissory estoppel fails.[15]

20   **I.     Lasoff's Demand for Exemplary Damages and Attorneys' Fees Should Be Stricken.**

21        In his request for relief, Mr. Lasoff seeks compensatory damages of $3.6 million in lost

22   profits and asks that such damages be trebled "pursuant to 15 U.S.C. § 1117 because of the

23   _____
     [14] Again, there is no substantive difference in a promissory estoppel claim under New
24   Jersey law, and Washington law therefore applies.  *See E. Orange Bd. of Educ. v. N.J. Sch.
     Constr. Corp.*, 963 A.2d 865, 874-75 (N.J. Super. Ct. App. Div. 2009).
25        [15] Contrary to Mr. Lasoff's assertions, Amazon did engage with Mr. Lasoff in a good
     faith attempt to address his concerns with third-party sellers.  *See* Power Decl., Exs. C & D.
26   Amazon blocked numerous seller listings over a multi-year period.  *Id.*

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 23
2:16-cv-00151-BJR

88186409.8 0053837-00632

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1  willful and unlawful acts as alleged herein." Dkt. # 1 at p. 16 (Prayer for Relief) ¶ 2.  He also

2  seeks recovery of Amazon's profits and reimbursement of his attorneys' fees.  *Id.* ¶¶ 3, 4.

3  Setting aside the fact that Mr. Lasoff admits that the highest annual profit he achieved (in 2011)

4  was less than $20,000 (*see* Power Decl., Ex. A (Lasoff Dep. 130:17-131:1)), Mr. Lasoff has

5  established no basis for his demand for exemplary damages.

6        First, treble damages are not available where, as here, Mr. Lasoff offers only conclusory

7  allegations and has established no evidence that Amazon engaged in willful or intentional

8  infringement.  *See id.* (Lasoff Dep. 52:7-22) (testifying that "[t]o me on purpose and negligent in

9  my -- it is the same thing"); 15 U.S.C. § 1117(b)(1); *Bell Helicopter Textron Inc. v. Islamic*

10  *Republic of Iran,* 764 F. Supp. 2d 122 (D.D.C. 2011).  Further, an award of attorneys' fees in

11  trademark litigation is only appropriate in "exceptional" cases.  *Caesars World, Inc. v. Venus*

12  *Lounge, Inc.,* 520 F.2d 269, 272 n.1 (3d Cir. 1975).  This is not an exceptional case, given that

13  Mr. Lasoff has no evidence of actual infringement by Amazon, let alone willfulness.  Finally,

14  Mr. Lasoff may not recover both his lost profits and Amazon's profits.  *See United Phosphorus,*

15  *Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1227 (10th Cir. 2000).

16                                    **IV.  CONCLUSION**

17        Mr. Lasoff's attempt to hold Amazon responsible under 11 different causes of action for

18  what he concedes are the actions of third-party sellers is without merit.  Summary judgment

19  should be granted in Amazon's favor on all claims.

20

21

22

23

24

25

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 24
2:16-cv-00151-BJR

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1       DATED:  December 5, 2016.

2                           STOEL RIVES LLP

3

4

                           Vanessa Soriano Power, WSBA No. 30777

5                           vanessa.power@stoel.com

6                           STOEL RIVES LLP
                           600 University Street, Suite 3600

7                           Seattle, WA  98101
                           Telephone:  (206) 624-0900

8                           Facsimile:  (206) 386-7500

9                           Stephen H. Galloway, OSB No. 093602
                           stephen.galloway@stoel.com

10                         STOEL RIVES LLP
                         760 SW Ninth Avenue, Suite 3000

11                         Portland, OR 97205
                         Telephone:  (503) 224-3380

12                         Facsimile:  (503) 220-2480
                         Admitted *Pro Hac Vice*

13                         Attorneys for Defendant Amazon.com, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S MOTION FOR SUMMARY JUDGMENT - 25
2:16-cv-00151-BJR

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

88186409.8 0053837-00632