1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN LASOFF,

               Plaintiff,

    v.

AMAZON.COM INC,

               Defendant.

CASE NO. C16-151 BJR

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter is before the Court on Defendant's motion for summary judgment.  (Dkt. No. 49.)  The motion seeks dismissal of all claims filed by Plaintiff: trademark infringement (15 U.S.C. § 1125(a) and N.J.S.A. § 56:3-13.16), false advertising (15 U.S.C. § 1125(a)), unfair competition (15 U.S.C. § 1125(a), N.J. Stat. § 56:4-1, and common law), tortious interference with prospective economic advantage, gross negligence (New Jersey common law), monopolization (Sherman Act § 2), unjust enrichment and promissory estoppel.  (*See* Dkt. No. 1, Complaint, Counts I – IX, pp. 8-15.)  Plaintiff opposes the motion.

1    Upon review of all briefing, the applicable case law and relevant parts of the record, the

2    Court GRANTS summary judgment to Defendant; Plaintiff's claims are ordered DISMISSED

3    with prejudice in their entirety.  The Court's reasoning follows:

4    **II.     LEGAL STANDARD**

5    Summary judgment is appropriate if the evidence, when viewed in the light most favorable

6    to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and

7    the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see Celotex Corp. v.*

8    *Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The

9    court is "required to view the facts and draw reasonable inferences in the light most favorable to

10   the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

11   The moving party bears the initial burden of showing there is no genuine issue of material

12   fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the

13   moving party meets its burden, the burden shifts to the non-moving party to "make a showing

14   sufficient to establish a genuine dispute of material fact regarding the existence of the essential

15   elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.

16   **III.    BACKGROUND**

17   Plaintiff Steven Lasoff ("Lasoff") is the sole owner of a business known as Ingrass, an

18   enterprise which has marketed artificial turf and related products since 2004.  (Dkt. No. 55-1, Decl.

19   of Lasoff, ¶ 2.)  In 2008, Lasoff entered into a Business Solutions Agreement ("BSA")[1] with

20   Defendant Amazon.com, Inc. ("Amazon").

21

22   ---

[1] Defendant provided a copy of the BSA as an attachment to its motion. (Dkt. No. 50, Decl. of Schelle, Ex. A.)
While Plaintiff indicates that he is not certain that this is the version of the BSA he signed in 2008 (Decl. of Lasoff,
23   ¶ 11), at no time does he either deny that the provisions cited by Defendant in its briefing were part of his agreement
or provide the Court with a copy of the BSA that he signed.  The Court accepts as undisputed fact for purpose of this
24   motion that those cited provisions were part of Plaintiff's agreement with Defendant.

1      Amazon operates the website www.amazon.com, an internet retail marketplace through

2 which Amazon and third-party vendors sell their products.  Initially, Lasoff experienced a "steady

3 and substantial rise" in sales of his products, but in 2013 those sales began to "plummet," both on

4 his own website (Ingrass.com) and Amazon's website. (*Id.* at ¶¶ 12-13.)

5      Plaintiff's research revealed that third-party sellers were offering cheaper, counterfeit

6 "Ingrass" products for sale on Amazon.com.  (*Id.* at ¶ 14.)  There is no dispute that Amazon's

7 policies forbid third-party vendors from selling products which violate the intellectual property

8 rights of others.  (Dkt. No. 50, Decl. of Schelle, Exs. E, F.)  The problem, from Plaintiff's

9 perspective, was that when potential online consumers would click on links advertising "Ingrass"

10 products in Defendant's promotional emails or in "sponsored link" advertisements on third-party

11 search engines (e.g., Google, Bing or Yahoo), they were directed, not to Plaintiff's Ingrass

12 products on Defendant's website, but "to competing listings which falsely advertised products as

13 'Ingrass' products at a substantially discounted price." (Decl. of Lasoff, ¶ 16.)

14      There is no dispute regarding how Amazon creates its promotional emails and its

15 "sponsored link" advertising on third-party search engines.  The email marketing at issue is an

16 automated process whereby an algorithm selects an advertisement to email to a customer based on

17 information retained from that customer's browsing sessions on Defendant's website (e.g.,

18 products which the customer viewed online but did not purchase).  (Dkt. No. 51, Decl. of Brauner,

19 ¶ 4.)  The content of the advertisement within the email is supplied by the vendor of the product,

20 who has represented to Defendant that it has the right to license Amazon to display that content.

21 (Decl. of Schelle, ¶ 9.)

22

23

24

Similarly, the facts concerning Amazon's advertisement on third-party search engines are not disputed. Defendant has an automated system which generates "keywords" (words or phrases related to products or product names) based on consumer searches on its websites.

An algorithm determines the terms that are bid as keywords for search engine advertising. Once a keyword is bid, when users search for that term on Google or another search engine, the results will display an ad for Amazon or for a product listed on amazon.com that is related to the keyword.

(Decl. of Brauner, ¶ 6.) These "sponsored link" advertisements appear above the results of an internet user's search once the keyword is entered into the search engine.

Plaintiff asserts that his complaint is not directed at the sale of competing and/or counterfeit products on Defendant's website. (Decl. of Lasoff, ¶ 18.) Lasoff's complaint, rather, "is that Defendant has misappropriated the Ingrass trade and domain name without permission, by bidding on, and paying for, the keywords 'Ingrass' and/or 'Ingrass.com' on third-party search engines." (Dkt. No. 55, Response at 5.) He further alleges that Amazon's use of "Ingrass" and "Ingrass.com" as keywords was unauthorized and a violation of his trademark and other legal rights. (Complaint, Counts I – IX, pp. 8-15.)

## IV.   DISCUSSION

There are no disputed material facts, simply a dispute about the legal impact of the facts; as discussed more fully below, Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims. The Court will first examine a procedural issue raised by Plaintiff, then proceed to a summary judgment analysis of his claims.

### A.   Fed.R.Civ.P. 56(f)

Plaintiff opens his responsive briefing with a section devoted to what appears at first blush to be a motion to continue or deny the summary judgment motion on Fed.R.Civ.P. 56(f) grounds;

specifically, that certain alleged deficiencies in Defendant's discovery responses have left him without the facts required to fully respond to the dispositive motion.  (Dkt. No. 55, Response at 8-9.)  Curiously, however, he then rescinds that motion in a footnote:

> If the information requested in discovery was critical to defending against the fundamental claims in this motion, Lasoff would have moved for a continuance under FRCP 56(f). Because Lasoff can adequately defend against summary judgment without resort to the requested information though, it is not necessary to make such a motion.

(*Id.* at 9 n.4.)  The Court will take Plaintiff at his word and analyze the parties' arguments based on the evidence provided.

## B.  The Communications Decency Act and Plaintiff's state law claims

The Communications Decency Act (47 U.S.C. § 230; "CDA") states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The statute does contain some exceptions to this immunity, among them that "nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2).  However, the Ninth Circuit has held this "intellectual property" exclusion applies only to federal intellectual property law.  *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1119 (9th Cir. 2007).[2]  Hence, if the CDA applies to these facts, Plaintiff's state law claims cannot survive.

The Court finds that the CDA does apply.  Plaintiff does not contest that Amazon is "an interactive computer service;" rather, he argues that the information which forms the basis of his claims (i.e., the emails and online advertising generated through Amazon's "keyword" algorithm)

---

[2] The Court declines Plaintiff's invitation to ignore and/or overrule this holding.  Outlier or not, *Perfect 10* is the Ninth Circuit precedent on the controlling legal issue in this regard and this Court is bound to follow it.  *Hart v. Massanari*, 266 F.3d 1156, 1170 (9th Cir. 2001).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

1    has not been "provided by another information content provider" as the statute requires.  His

2    position is that, in creating the algorithm that generates the keywords and then purchasing the right

3    to use them on third-party search engines, Amazon is a "direct actor" rather than a passive conduit

4    of information content generated by some other provider.

5          The Ninth Circuit has spoken on this issue.  In *Carafano v. Metrosplash.com, Inc.*, 339

6    F.3d 1119 (9th Cir. 2003), an online dating service was held, under the CDA, to be immune from

7    liability for false representations posted on the website regarding the plaintiff.  The *Carafano* court

8    cited with approval the decision in *Gentry v. eBay, Inc.*, 99 Cal.App. 4th 816 (Cal.Ct.App. 2002),

9    wherein it was held

10       [E]nforcing [Plaintiffs'] negligence claim would place liability on [Defendant] for simply
     compiling false and/or misleading content created by the individual defendants and other

11   coconspirators.  We do not see such activities transforming [Defendant] into an information
     content provider with respect to the representations targeted by [Plaintiffs] as it did not

12   create or develop the underlying information.

13   *Id.* at 834.

14         The Court understands the basis of Plaintiff's complaint (and the grounds on which he

15   attempts to differentiate his circumstances from those of plaintiffs who have sued interactive

16   computer services for false information posted on their websites) to be that Amazon's involvement

17   in selecting keywords from the content on its site, bidding on those keywords and using them in

18   emails and search engine advertising takes it out of the role of passive information conduit and

19   into the realm of direct content provider.  The case law does not support Plaintiff's position.

20         As Plaintiff acknowledges, the crux of the CDA litmus test is "whether the cause of action

21   inherently requires the court to treat the defendant as the publisher or speaker of content provided

22   by another.  If it does, section 230(c)(1) precludes liability."  (Response at 13, *citing Barnes v.*

23   *Yahoo!Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).)  That is exactly what Plaintiff is asking this

1  Court to do, and what the CDA prohibits. The content to which Plaintiff objects (the "Ingrass"

2  keyword and the misrepresentations by copycat competitors that their products are "Ingrass"

3  products) is provided by third parties and the claims which Plaintiff prosecutes attempt to cast

4  Amazon as the "publisher or speaker" of that content.  As *Carafano* makes clear,

> [E]ven assuming [Defendant] could be considered an information content provider, the statute precludes treatment as a publisher or speaker for "*any* information provided by *another* information content provider." *47 U.S.C. 230(c)(1)*(emphasis added).  The statute would still bar [Plaintiff's] claims unless [Defendant] developed the particular information at issue.

339 F.3d at 1119.   The fact that Defendant created the automated system which identifies the

desirable keywords and then propagated advertisements based on those keywords is not what

Lasoff seeks to hold it liable for; it is that the information generated by that system is improperly

damaging to his legitimate and protected business interest in the brand "Ingrass."  The fact is that

Amazon neither created nor developed *that* information content, and the CDA prohibits Plaintiff

from seeking to hold Amazon liable for certain violations as though it had.

As indicated in § 230(e)(2) of the CDA and *Perfect 10*, this does not immunize Amazon

from liability under federal intellectual property law.  However, Counts III (New Jersey unfair

competition, N.J. Stat. 56:4-1), IV (New Jersey common law unfair competition), V (New Jersey

trademark infringement, N.J.S.A. 56:3-13.16), VI (tortious interference with prospective economic

advantage), VII (New Jersey common law gross negligence), IX (unjust enrichment)[3], and X

(promissory estoppel) are state law causes of action.  Further, all are predicated on a legal theory

which would hold Amazon liable as the "publisher or speaker" of information which resulted in

---

[3] Plaintiff's complaint erroneously lists two "Count VIII's"; for purposes of this order, the Court has redesignated the second of the two (unjust enrichment) as Count IX, and the following count (promissory estoppel) as Count X.

1   injury to Plaintiff.   As such, they are prohibited by the CDA and Defendant is entitled to summary

2   judgment of dismissal regarding those claims.

3

4   **C.  <u>Substantive analysis of state law claims</u>**

5       Defendant devotes a portion of its summary judgment briefing to substantive arguments

6   regarding the invalidity of Plaintiff's state law and/or common law claims.  Plaintiff's responsive

7   briefing contained no counter-arguments to this substantive analysis.  However, because the ruling

8   on the applicability of the CDA invalidates all of Plaintiff's non-federal causes of action, the Court

9   finds it unnecessary to reach the substantive merits of those claims.

10

11   **D.  <u>Federal trademark infringement/unfair competition</u>**

12       Lasoff asserts federal claims for trademark infringement and unfair competition under the

13   Lanham Act (15 U.S.C. § 1125(a)(1)(A)).  To successfully prosecute a Lanham Act claim, "a

14   plaintiff must prove two basic elements: '(1) it has a valid, protectable trademark, and (2) [the

15   defendant's] use of the mark is likely to cause confusion.'" *S. Cal. Darts Assoc. v. Zaffina*, 762

16   F.3d 921, 929 (9th Cir. 2014)(*quoting Applied Info. Sciences Corp v. eBay, Inc.*, 511 F.3d 966,

17   969 (9th Cir. 2007)).

18       **1.  <u>*Valid, protectable trademark*</u>**

19       As Plaintiff agrees, "Ingrass" is not a registered mark under either federal or state law.  The

20   result of this fact for purposes of this proceeding is that there is no presumption of validity for the

21   "Ingrass" mark; Lasoff bears the burden of establishing that it is a valid, protectable trademark.

22   *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981).

23

24

Proof of trademark validity requires a plaintiff to establish both ownership and protectability. *S. Cal. Darts Assoc.*, 762 F.3d at 929. Amazon concedes for purposes of this motion that Lasoff owns the Ingrass mark. (Motion at 9.) Defendant challenges Plaintiff's evidence of protectability, however.

"Whether a mark is protectable depends on its degree of 'distinctiveness.'" 762 F.3d at 929. "Distinctiveness" is divided into five categories. In ascending order of strength and protectability, they are: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Neither party argues that the Ingrass mark falls under the generic, arbitrary or fanciful rubric.

Amazon contends that "Ingrass" is a mark of a descriptive nature. "A descriptive mark is a mark that 'describes the qualities or characteristics of a good or service.'" *Meth Lab Cleanup, LLC v. Bio Clean, Inc.*, No. C14-1259RAJ, 2016 WL 4539564, at *7 (W.D. Wash. Aug. 31, 2016)(*quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Other than quoting from Lasoff's deposition[4], Amazon provides no further argument or authority to support its conclusion that Ingrass is a "descriptive" trademark.

Plaintiff's position is that his Ingrass mark is a "suggestive" mark.

[A] mark is more likely suggestive if it passes the imagination test, which asks whether the mark "requires a mental leap from the mark to the product." *Brookfield Communs.*, 174 F.3d at 1058; *see also* 2 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 11:71 (4th ed. 2004) ("MCCARTHY") ("Is some reflection or multistage reasoning process necessary to cull some direct information about the product from the term used as a mark?"). "[T]he imagination test is [the] primary criterion for evaluating" whether a mark is suggestive. *Zobmondo*, 602 F.3d at 1116 (quotation marks omitted).

---

[4] Specifically, Plaintiff's testimony that "Ingrass" is short for "It's Not Grass." (Dkt. No. 50, Decl. of Power, Ex. A, Depo. of Lasoff, 10:20-25.)

1   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgt., Inc.*, 618 F.3d 1025, 1033 (9th Cir.

2   2010).  Suggestive marks "connote, without describing, some quality, ingredient, or characteristic

3   of the product."  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).  Examples

4   of such marks are "Coppertone" (for suntan lotion) or "Orange Crush" (for a carbonated beverage).

5   *Id.*

6        With that distinction in mind, the Court finds that the "Ingrass" mark is suggestive rather

7   than descriptive.  The name "Ingrass" does not describe the "qualities or characteristics" of

8   Plaintiff's product; rather, it requires a leap of imagination and understanding to go from the

9   product name to the actual product.  While the Court cannot imagine an average consumer instantly

10  understanding what Plaintiff's product is based on the name, it is not difficult to imagine that same

11  consumer saying something like "Oh, I get it" upon seeing the product to which the mark is

12  attached.  On that basis, the mark is best categorized as suggestive and thus both strong and worthy

13  of protection.

14          **2.   *Use of the mark***

15       Defendant challenges the allegation it has "used" Plaintiff's trademark, and, even if the

16  Court were to find to the contrary, whether such "use" subjects it to liability for direct infringement.

17       The cases cited by Defendant in support of its argument that it has not "used" Lasoff's

18  mark are more notable for what they do not say than for what they do.  *Fonovisa , Inc. v. Cherry

19  Auction, Inc.* (76 F.3d 259 (9th Cir. 1996)) and *Hard Rock Cafe Licensing Corp. v. Concession

20  Servs.* (955 F.2d 1143 (9th Cir. 1992)) both concern "swap meet/flea market" operations where

21  third party vendors were permitted to sell counterfeit "knock off" goods.  Although there is no

22  finding in either opinion that the defendants "used" the plaintiffs' trademark in the sense intended

23  by the Lanham Act, the fact remains that neither is a direct trademark infringement case.  (In

24

1   *Fonovisa,* the plaintiff-appellant did not challenge the lower court's dismissal of its direct

2   infringement claim; in *Hard Rock Cafe,* a direct infringement claim was never alleged.)  Amazon

3   clearly wishes the Court to find its position analogous to those of the swap meet operators; the

4   analogy is not a strong one (there is no evidence that the swap meet operators generated

5   promotional messages advertising the counterfeit goods, for one thing).  While it is instructive that

6   no liability for direct trademark infringement was assessed against either of the defendants in

7   Amazon's cases, their failure to analyze (in the context of the Lanham Act) whether those

8   defendants had "used" the plaintiffs' trademarks renders them of limited utility.

9          Plaintiff responds with precedential authority which comes closer to the mark but is still

10  distinguishable from this fact pattern.  *Network Automation, Inc. v. Advanced Sys. Concepts,* 638

11  F.3d 1137 (9th Cir. 2010), concerns a case where one software engineering company (Network)

12  purchased the trademarked name of its competitor (Advanced) as a keyword on a third-party search

13  engine and used that mark in online advertising for its competing product.  The Ninth Circuit noted

14  that "the district court correctly found the prerequisite 'use in commerce' in Network's use of the

15  mark to purchase keywords to advertise its products for sale on the Internet."  *Id.* at 1144.

16         Defendant's attempt to distinguish their conduct by differentiating between the

17  "deliberate" selection of Advanced's trademark by Network and the Amazon algorithm which

18  automatically selects keywords to purchase seems a hollow distinction: Amazon fails to explain

19  how the company's creation of a system which makes the selection for it insulates it from the

20  liability that can befall an enterprise which manually goes through the same process.  Defendant

21  fails to persuade that, in analyzing whether a party is "using" a mark for Lanham Act purposes,

22  creating the process by which a selection is made is ultimately any different than actually making

23  the selection.

24

1    *Network Automation* cited with approval a second case on which Plaintiff relies.

2    *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123 (2nd Cir. 2009), involves a lawsuit against a

3    search-engine entity for its practice of algorithmically finding and then recommending the use of

4    the plaintiff's trademark to the plaintiff's competitors through Google's "AdWorks" program.

5    Google argued that "the inclusion of a trademark in an internal computer directory cannot

6    constitute trademark use," but the court advised that the fact that an internal software program

7    automatically generated the trademarked name as a possible keyword and stored it in an internal

8    directory would not "insulate[ ] the alleged infringer from a charge of infringement" if that

9    keyword were made available for purchase from the directory and later used in a commercial

10   fashion likely to deceive a consumer. *Id.* at 129-130.   The generation of a trademark as a keyword

11   for sale under those circumstances was, at the very least, a "use in commerce."

12          While the Court agrees that these cases preclude a summary judgment ruling that

13   Defendant's practice is *not* a "use in commerce" under the Lanham Act, the inquiry cannot end

14   there.  For one thing, there are critical factual differences between the *Network Automation* and

15   *Rescuecom* opinions and the instant case.  Unlike the appellant in *Network Automation*, Amazon

16   is not a competitor of Plaintiff's; no theory has been advanced asserting the Defendant has any

17   motivation or intent to promote other businesses at the expense of Plaintiff's.[5]   Unlike the

18   defendant company in *Rescuecom*, Amazon is purchasing (not selling) the use of Plaintiff's mark

19   as a keyword.

20

21   _____

22   [5] Amazon's "non-competitive" status vis-à-vis Plaintiff points out a significant problem in Plaintiff's attempt to hold
     it liable as a trademark infringer/unfair competitor.  Trademark infringement law is primarily concerned with
     stopping one person or entity from gaining an unfair competitive advantage over a business rival by misusing a

23   protected mark.  No one who offers their product for sale on amazon.com is a "competitor" of Amazon, and
     attempting to shoehorn the company into a direct trademark infringement framework creates a "square peg-round

24   hole" situation for which traditional trademark law seems ill-suited.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

1     Most significantly, however, there is case law on all fours with the factual circumstances

2     of this case which holds that, even if Amazon's algorithmic purchase of Plaintiff's mark as a

3     keyword is a "use in commerce" for Lanham Act purposes, such use does not subject Defendant

4     to liability for direct trademark infringement.  Defendant cites *Tiffany (NJ) Inc. v. eBay, Inc.,* 600

5     F.3d 93 (2nd Cir. 2010) in support of its position that its conduct is not a violation of laws against

6     direct trademark infringement.  The Court is inclined to agree.

7           *Tiffany (NJ)* involves a lawsuit by the renowned jewelry company against eBay, the equally

8     famous internet auction and retail sale website.  Seeking to "promote sales of premium and branded

9     jewelry, including Tiffany merchandise, on its site," the defendant "purchased sponsored-link

10    advertisements on various search engines to promote the availability of Tiffany items on its

11    website."  *Id.* at 101.  Alleging that eBay's use of its trademarked name was permitting and

12    promoting the sale of counterfeit goods, Tiffany sued, arguing that "eBay had directly infringed

13    its mark by using it on eBay's website and by purchasing sponsored links containing the mark on

14    Google and Yahoo!."  *Id.* at 102.

15          The Second Circuit Court of Appeals upheld the dismissal of Tiffany's claims, finding that

16    "eBay's use of Tiffany's mark on its website and in sponsored links was lawful…[and] is not a

17    basis for a claim of direct trademark infringement."  *Id.* at 102-103.  The *Tiffany* court held that "a

18    defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the

19    plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the

20    defendant."  *Id.*   The Second Circuit refused to require that eBay be the guarantor of the

21    "genuineness of all of the purported Tiffany products offered on its website," finding that to do so

22    would "unduly inhibit" its right to lawfully offer genuine Tiffany goods.  *Id.* at 103.

23

24

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

1   The Court finds Amazon's position directly analogous to that of eBay, and further finds

2   that the holding of *Tiffany (NJ)* – that there are "uses in commerce" which do not subject the user

3   to liability for direct trademark infringement – applicable to this case.  Plaintiff has not argued,

4   and the Court finds no evidence in the record, that Defendant at any time "impl[ied] a false

5   affiliation or endorsement by [Lasoff] of [Amazon.]"  (*See also Tre Milano, LLC v. Amazon.com,*

6   *Inc.,* 2012 WL 3594380 (Cal. Ct. App.  Aug. 22, 2012), for a ruling exempting Amazon from direct

7   trademark infringement liability on *Tiffany (NJ)* grounds.)

8   The Court finds it significant that Plaintiff makes no direct counter-argument to this

9   authority, but instead devotes a significant portion of his responsive briefing to an argument that

10  Defendant should instead be subject to liability for *contributory* trademark infringement, a cause

11  of action which Plaintiff did not plead.  (Response at 20-23.)  The Court will not permit Plaintiff,

12  absent a formal motion and lacking any evidence of good cause, to amend his complaint to add an

13  additional claim against Defendant at this stage of the proceedings.  The Court will find that the

14  law upholds Defendant's immunity from Lanham Act direct trademark infringement and/or unfair

15  competition liability under these circumstances, and grant summary judgment of dismissal with

16  prejudice of those claims.

17

18  **E.  False advertising**

19  The Lanham Act assigns liability to any party who, "in commercial advertising or

20  promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or

21  another person's goods, services or commercial activities."    15 U.S.C. § 1125(a)(1)(B).  The

22  elements of a false advertising claim require a plaintiff to prove:

23      (1) the defendant made a false statement of fact about a product in a commercial
        advertisement, (2) the statement actually deceives or has the tendency to deceive a

24

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

substantial segment of its audience, (3) the deception is material, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Appliance Recycling Centers of Amer., Inc. v. JACO Environmental, Inc.,* 378 F.App'x 652, 654 (9th Cir. 2010)(*citing Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997)).

Plaintiff's claim in this regard is undercut by problems similar to those which invalidated his state law claims under the CDA; namely, that the misrepresentations of which he complains originate with third-party vendors, not with Defendant.   Defendant asserts that Amazon's advertising and other promotional materials truthfully depict what is offered for sale on its website; the liability for the false representations of Plaintiff's trademark lies with the third-party sellers, not with Amazon.

Legal support for Defendant's position can be found in *Baldino's Lock & Key Service, Inc. v. Google, Inc.*, 624 F.App'x 81 (4th Cir. 2015).   Plaintiff, a state-licensed locksmith, sued Defendant Google and other websites, alleging that their publishing of the names, addresses and phone numbers of unlicensed locksmiths constituted a Lanham Act violation.   The Fourth Circuit affirmed the dismissal of the plaintiff's false advertising claim, holding that

> Baldino's failed to show that the Defendants made any representations.   Rather, the locksmiths who generated the information that appeared on Defendant's websites are solely responsible for making any faulty or misleading representations or descriptions of fact.

*Id.* at 82.   Plaintiff attempts to distinguish the case on the basis that the Google advertisements were published directly by the unlicensed locksmiths, but this argument strengthens Defendant's position: just as Google could not be held liable for reproducing material which it did not know was false, neither can Amazon.   Plaintiff fails to draw a meaningful distinction between two interactive computer service providers who created a platform for advertising which contained

1    misrepresentative material generated by third parties.  In both instances, liability lies with the

2    vendors who created the misleading content, not the service providers who transmit that content.

3         Defendant's motion for summary judgment dismissal of Plaintiff's false advertising claim

4    will be granted.

5

6    **F.  Sherman Act monopoly claim**

7         Defendant attacks Plaintiff's cause of action for "monopolization" under the Sherman Act

8    on the grounds that Lasoff cannot identify a "relevant market" as required by case law.  *See Forsyth*

9    *v. Humana, Inc.,* 114 F.3d 1467, 1476 (9the Cir. 1997).  A relevant product market usually

10   comprises "the pool of goods or services that enjoy reasonable interchangeability of use and cross-

11   elasticity of demand," and "[f]ailure to identify a relevant market is a proper ground for dismissing

12   a Sherman Act claim." *Tanaka v. Univ. of S.Cal.,* 252 F.3d 1059, 1063 (9th Cir. 2001).

13        The Court agrees with Amazon that what Plaintiff's complaint (essentially, that Amazon

14   has "monopolized advertising of artificial turf in online search engines;" Complaint at ¶ 95)

15   describes is a "monopsony," or buyer's side monopoly where the market is the pool of competing

16   buyers.  From that perspective, "[t]he proper focus is… the commonality and interchangeability

17   of the buyers, not the commonality and interchangeability of the sellers." *Todd v. Exxon Corp.,*

18   275 F.3d 191, 202 (2nd Cir. 2001)(quoting Roger D. Blair & Jeffrey L. Harrison, *Antitrust Policy*

19   *and Monopsony*, 76 Cornell L. Rev. 297, 324 (1991)).

20        Plaintiff's "monopsony" legal theory has two problems.  The first is the interchangeability

21   of search engine advertising with other forms of internet advertising.  Because there is no basis for

22   distinguishing the "search engine advertising" market from the larger market of all internet

23

24

advertising, the former is simply too narrow to form a meaningful "relevant market" for purposes of antitrust liability.  *See Person v. Google, Inc.,* 2007 WL 832941 at *4 (N.D. Cal. Mar. 16, 2007).

By contrast, the pool of competing purchasers is simply too large; i.e., there are multiple alternative buyers of online search engine advertising.[6]  Plaintiff's complaint makes no attempt, beyond general "monopolization" allegations, to address the interchangeability of purchasers of online search engine advertising for artificial turf products.  Where the "service offeror" has "too many alternative buyers for [its] services," monopsony is not possible.  *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 980 F.2d 589, 598 (1st Cir. 1993).

In addition to finding Defendant's Sherman Act arguments persuasive, the Court notes that Plaintiff's responsive briefing contains no counter-arguments.  Defendant's motion for summary judgment dismissal of Plaintiff's Sherman Act claim will be granted.

### G.  Exemplary damages and attorney's fees

Besides compensatory damages for lost profits, Lasoff asks that his damages be trebled "pursuant to 15 U.S.C § 1117 because of the willful and unlawful acts as alleged herein" (Complaint, Prayer for Relief, ¶ 2.), and seeks reimbursement of his attorney's fees and costs.  (*Id.* at ¶ 4.)

In light of the dismissal of all of his claims, it is axiomatic that Plaintiff's request for punitive damages, attorney's fees and costs will likewise be rejected.

---

[6] Ex. D to Plaintiff's own complaint lists the top 10 advertisers on Google, each of which spend in excess of $50 million annually in Google advertising.  *See* Complaint, Ex. D.  Amazon tops the list, but it clearly does not control the market of available buyers of online search engine advertising.

1    ## V.    CONCLUSION

2        The Court is aware that summary judgment is "generally disfavored in the trademark

3    arena" because of the "intensely factual nature" of trademark cases. *Entrepreneur Media v. Smith*,

4    279 F.3d 1135, 1139 (9th Cir. 2002); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

5    *Mgt., Inc.*, 618 F.3d 1025, 1029 (9th Cir. 2010).   This is not a classic trademark infringement

6    scenario, however; the Court finds that, while Plaintiff may well have a protectable trademark, the

7    evidence clearly indicates that his remedy for its infringement does not lie against this defendant.

8        The material facts are not in dispute and the law dictates the outcome under these

9    circumstances.  Because Amazon did not create the information which appears in its online ads

10   and emails, its use of that information is immunized from liability for direct infringement, unfair

11   competition, and the remainder of Plaintiff's claims, at both the federal and state levels.  For the

12   reasons given above, Defendant's motion for summary judgment will be granted in its entirety and

13   Plaintiff's claims against that defendant will be dismissed with prejudice.

14        The clerk is ordered to provide copies of this order to all counsel.

15        Dated January 26, 2017.

16

17

18   Barbara Jacobs Rothstein
     U.S. District Court Judge

19

20

21

22

23

24